IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2002

## TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES
## v. FLORENCE HOFFMEYER, ET AL.

**Appeal from the Juvenile Court for Robertson County**
**No. D-18308      Max Fagan, Judge**

**No. M2002-00076-COA-R3-JV - Filed March 13, 2003**

PATRICIA J. COTTRELL, J., concurring.

I disagree with the conclusion of the majority that the December 30, 1999 order entered in this cause was not a final order. In that order, the trial court specifically held that the children were dependent and neglected as defined by Tenn. Code Ann. § 37-1-102(b)(12)(F); found that there had been severe child abuse; found that the father had sexually battered one minor child and had violated Tenn. Code Ann. § 39-13-527; and awarded temporary custody of the children to the Department of Children's Services.

Tenn. Code Ann. § 37-1-159(a) provides for the appeal of a final order or judgment in a dependent and neglect proceeding to circuit court. Subsection (c) of that statute provides a deadline for hearing an appeal from a juvenile court decision "that involves the removal of a child or children from the custody of their natural and/or legal parents." If, after a hearing, a child is found by clear and convincing evidence to be dependent and neglected, the court may transfer temporary legal custody to a specified list of individuals or entities, including the Department of Children's Services. Tenn. Code Ann. § 37-1-129 (c) & -130(a)(b). Thus, an order finding a child dependent and neglected and transferring custody, as did the December 30, 1999 order herein, is a final judgment on those issues. A parent whose child is found to be dependent and neglected and who is removed from that parent's custody has a right to immediately appeal such an order.

Tenn. Code Ann. § 37-1-129(a)(2) requires a court considering a petition alleging that a child is dependent and neglected to "determine whether the parents or either of them or another person who had custody of the child committed severe child abuse" and to file written findings of fact which are the basis of its conclusions on that issue. Such a finding triggers other statutory provisions including a prohibition on returning the child to the home of any person who engaged in or knowingly permitted the abuse until the court has received and considered reports and recommendations, by parties specified in the statute, prepared in light of a possible return of the child. Tenn. Code Ann. §37-1-130(c). "No child who has been found to be a victim of severe child abuse shall be returned to such custody at any time unless the court finds on the basis of clear and

convincing evidence that the child will be provided a safe home free from further such brutality and abuse." Tenn. Code Ann. §37-1-130(d). The trial court's December 1999 order includes language to this effect.

Simply because the order directs that further action be taken does not affect its finality as to the findings of dependency and neglect and award of custody. Because temporary custody was awarded, future activity was required to determine future placement and any eventual award of permanent custody. In addition to the statutory finding required by Tenn. Code Ann. § 37-1-130(d), other statutory requirements exist regarding a child found dependent and neglected, and/or the victim of abuse, and the temporary custody of whom has been transferred from the parents. *See*, *e.g.*, Tenn. Code Ann. § 37-1-130(c) & (e). The juvenile court herein ordered evaluations and recommendations "regarding the possibility and advisability of reunification of the minor children with their parents."

When a child is removed from the home and placed with the Department, various reports and determinations are required, including the development of and a hearing on a permanency plan, Tenn. Code Ann. § 37-1-166. A foster care placement also requires a permanency plan within thirty (30) days of placement in foster care. Tenn. Code Ann. § 37-2-403(a)(1). The court is required to review such a plan. Tenn. Code Ann. § 37-2-403(a)(3). Periodic subsequent hearings are required for a child placed in foster care to review the permanency plan and goals. Tenn. Code Ann. § 37-2-409.

None of these further proceedings regarding a child's placement make the initial order finding grounds for award of temporary custody other than final. Such an order provides the legal basis for the court's and the department's continuing involvement in the child's placement and obligation to the child. Consequently, I would find that the 1999 order was a final order on the determination of dependency and neglect, award of custody, and the finding of child abuse.

I am troubled, however, by the Department's use of the prior finding of child abuse as a ground for termination of parental rights, coupled with its position that it was not required to use reasonable efforts to reunite this family, under the facts of this case.

It is accurate that one of the statutory grounds for termination of parental rights is "the parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court . . . ." Tenn. Code Ann. § 36-1-113(g)(4). Consequently, the ground itself is proved by a prior court order finding severe child abuse. Under a fair reading of the statute, the issue of whether abuse occurred does not need to be relitigated at the termination hearing. Apparently, neither the trial court nor this court is to go behind the order, absent a properly granted motion for relief from the judgment.[1]

---

[1]However, there are issues of the standard of proof. Unlike a decision to terminate parental rights or a finding of dependency and neglect, a finding of severe child abuse does not apparently have to be made upon a showing of clear and convincing evidence. The December 1999 order does not state that such a standard was applied; in fact, the language of the order implies that the court was troubled by the quality of evidence provided.

A finding of severe child abuse carries significant consequences, and a parent who is the subject of such a finding should be advised of those consequences at a time and in a manner that allows a meaningful decision on whether to appeal. The record before us does not indicate that, during the time available to them to appeal, the parents were informed that the finding of severe child abuse constituted a basis, in and of itself, for termination of their parental rights, regardless of their later conduct. To the contrary, the December 1999 order specifically mentions recommendations on reunification of the family. In addition, according to the Department "shortly after" the child was removed from the home, the Department and the parents entered into a permanency plan, the goal of which was to return the child to the family home.

A permanency plan for any child placed in foster care must include a goal of: (1) return of the child to the parent; (2) placement of the child with relatives; (3) adoption; (4) permanent foster care; or (5) emancipation. Tenn. Code Ann. § 37-2-403(a)(1). Such a plan must include a statement of the responsibilities between the parents, the agency and the caseworker. Tenn. Code Ann. § 37-2-403(a)(1). The court must review a proposed permanency plan, and may approve it or make necessary modifications. Tenn. Code Ann. § 37-2-403(a)(2)(a). A hearing is required, and deadlines exist. Tenn. Code Ann. § 37-2-403(a)(3). Such plans are subject to modification and shall be reevaluated and updated at least annually.[2] Tenn. Code Ann. § 37-2-403 (a)(1).

Although the record before us does not reflect the entirety of the court's and the Department's involvement with this child and this family, it does give us a more complete picture than just the two orders at issue. According to documents in the record, the child first came into custody of the Department in February of 1999. The first permanency plan in the record is dated March 8, 1999, and was signed by the child, the DCS caseworker, the parents, and the mother's attorney on March 9, 1999.

Thus, the November 1999 hearing which resulted in the December 1999 order finding the child dependent and neglected was held ten months after the child was placed in temporary custody of the Department[3] and nine months after the Department and the parents entered into agreement on a permanency plan which had a goal of reunification of the family. That order included direction from the court that it receive recommendations on reunification of the family. The order does not address the March 1999 permanency plan, and that plan was never approved by the court.

The record includes another permanency plan, introduced through the Department, dated June 16, 2000. This plan included a statement that "The Department will assist the family and child in completing the permanency plan." It also stated that the parents will receive counseling and admit their role and responsibility in abuse and named as the party responsible for those steps "counselor, DCS and placement." The caseworker admitted that the plan did not state that the mother was

[2] This requirement does not apply where a long term agreement for foster care has been reached in accordance with statutory requirements.

[3] This explains the court's reference to the inadequacy of the Department's investigation even though it had ten months to do that investigation.

responsible for contacting a counselor. The plan was signed by the child, the parents, the case manager and the foster parent. The goal of this plan remained "Return to parent." The plan was never approved by the court.

The technical record herein contains no record of court action during this time. However, at the termination hearing herein, the case manager testified to several events or conversations taking place when she and the parents appeared in court on August 23, 2000. The case manager's notes, entered into evidence, include a notation dated 8/23/00 stating the parents appeared in court that day. "This was a review of the termination of parental rights on [the child]. We are scheduled to reappear in court on 9/13/00. At that time Referee Flemming wants the petition filed." Obviously, this notation is not an official record of court action, but does confirm the case manager's testimony that the parents and the state appeared in a court hearing on that date.

The case manager testified that the last time she spoke with the parents was August 23, 2000, when they were in court for the hearing. She also testified that she found out at that time that the parents had moved, but she never visited them at the new address or did a home study there. At the termination hearing, the caseworker testified there had been regular visits at the DCS office until sometime the year before, stating, "I believe we have a court order for them not to visit anymore." The record before us contains no such order, and the June 2000 permanency plan indicates visitation had been ordered, was occurring, and was to continue.

Three months after the last permanency plan was signed, on September 7, 2000, the Department filed its first Petition to Terminate Parental Rights, alleging as grounds the prior finding of severe child abuse. Although the Department later took the position that a finding of severe child abuse relieves it of any responsibility to use reasonable efforts to help the parents meet their responsibilities under a permanency plan or to reunify the family, attached to the original petition is an "Affidavit of Reasonable Efforts." In that affidavit, the case manager testifies that the Department had provided the parents visitation with the minor child, psychological assessments, names of resources or agencies to provide housing and other help. The affidavit also states, "We provided the Hoffmeyers with a copy of the permanency plan which outlines barriers to permanency, services needed and action steps."

Again, the record is devoid of any records of the court reflecting activity for a number of months after the petition for termination was filed. Somewhat inexplicably, though perhaps in an attempt to comply with the requirements regarding review of permanency plans,[4] the Department filed a Notice of Permanency Planning Hearing on June 27, 2001, nine months after filing the initial petition to terminate parental rights. That notice stated that a permanency planning hearing had been scheduled "for further dispositional hearing to comply with . . . T.C.A. § 37-2-403 and 409." The notice stated:

---

[4] In addition to the initial permanency plan, within ninety (90) days after a child is placed in foster care and at least every six (6) months thereafter, a report on progress made in achieving the goals of the plan must be submitted to the appropriate court or board. Tenn. Code Ann. § 37-2-404.

The purpose of this hearing shall be to determine the future status of the child, including, but not limited to, whether the child should be returned to the parent, should be continued in foster care for a specified period, should be placed for adoption, or should, because of the child's special needs or circumstances, be continued in foster care on a permanent or long-term basis, and shall determine the extent of compliance of parties with the terms of the permanency plan, and the extent of progress in achieving the goal of the plan.

Based on the language of that notice, it would appear that the Department, nine months after filing a petition to terminate parental rights on the basis of a prior finding of abuse, still considered all the options for the goal of the permanency plan to be open for consideration and available, including a return to the parents. The record does not include any new plan or order or other indication of the result of the hearing, which was set for July 11, 2001. However, the record includes an order from the juvenile court, dated July 19, 2001, reflecting only that the matter of the subject child "came on for review" and, in the space for other orders, reflects a notation "Atty. review on 8/2/01 at 9:00 to set hearing for termination."

An Amended Petition to Terminate Parental Rights was filed August 6, 2001, ten months after the initial petition to terminate parental rights was filed. The amended petition alleged as grounds: (1) the failure of the parents to comply with their responsibilities under the permanency plans "entered into by said Defendants with the State of Tennessee, Department of Children's Services;" and (2) the continued existence of the conditions which led to removal or the existence of other conditions which in all probability would prevent the child's safe return to the home, that there was little likelihood these conditions will be remedied in the near future, and that continuation of the parent-child relationship greatly diminished the child's chance of early integration into a stable and permanent home. Tenn. Code Ann. § 36-1-113(g)(3)(A).

The Amended Petition did not re-adopt, incorporate, or refer to the single ground alleged in the original complaint. Other than the word "Amended" in its title, the document did not refer to the original petition at all. The amended petition repeated the various preliminary information and jurisdictional statements contained in the original petition. In short, the amended petition, on its face, is a substitute for the original petition. At the beginning of the trial, when the question of what grounds were at issue was raised, the trial court stated that, "even though the pleadings may be deficient in the form in the reference to the prior pleading" he would allow the Department to orally amend the petition to include the ground of a prior finding of severe child abuse "based on the fact that the record is clear that there has been a prior finding."

The court viewed this ruling as eliminating the need for proof of any other ground and making the only issue the best interest of the child. The Department indicated it wanted to provide proof on the other two grounds. The trial court dismissed the ground of failure to comply with the permanency plan because there was no existing permanency plan which had been approved by the court.

Despite its prior actions and disregarding the permanency plans it had agreed to, at the termination hearing the Department took the position that it was not required to use reasonable efforts to help the parents comply with the plan with the goal of reunification of the family, as required by Tenn. Code Ann. § 37-1-166.[5] Presumably, the Department's position also includes the reasonable efforts consideration in a termination proceeding, as required by the following provision:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> . . . .
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

Tenn. Code Ann. § 36-1-113(i).

As the Department maintains, Tenn. Code Ann. § 37-1-166(g)(4)(A) provides that reasonable efforts to reunify a family are not required to be made if a court has determined that a parent has subjected the child or a sibling to severe child abuse. However, there is nothing in the language of the statute to prevent the Department from making such efforts, as it claims it did here.

We find no statement or intent of the legislature that a finding of severe child abuse must always result in the termination of parental rights. Instead, the statutory system leaves to the discretion of the Department and the courts the determination of whether termination is to be sought and granted under the particular facts of the situation. The Department has the initial discretion to determine whether a particular situation is amenable to efforts to reunify the family. The statute regarding the Department's obligations to use reasonable efforts to make it possible for a child to safely return home provides, in pertinent part, that if reasonable efforts **"are not made"** because of

---

[5]That statute provides, in pertinent part:

(a) At any proceeding of a juvenile court, prior to ordering a child committed to or retained within the custody of the department of children's services, the court shall first determine whether reasonable efforts have been made to:

. . . .

(2) Make it possible for the child to return home.

(b) Whenever a juvenile court is making the determination required by subsection (a), the department has the burden of demonstrating that reasonable efforts have been made to prevent the need for removal of the child or to make it possible for the child to return home.

Tenn. Code Ann. § 37-1-166.

-6-

a court determination that one of the situations which obviates the reasonable efforts requirement exists,[6]

> (A) A permanency hearing shall be held for the child within thirty (30) days after the determination; and
>
> (B) Reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child.

Tenn. Code Ann. § 37-1-166(g)(5). The "determination" triggering the permanency plan hearing is the court determination that one of the situations exist in which reasonable efforts to preserve and unify families are not required, herein the finding of severe child abuse.

Thus, the legislature envisioned a decision that reunification is not possible within thirty days of the determination of severe child abuse. In that situation, the Department is not obligated to use reasonable efforts to reunify the family; such efforts would be inconsistent with the permanency goals for the child. *See* Tenn. Code Ann. § 37-1-166(g)(3).

The record herein does not indicate that any such hearing was requested or held within thirty days of the trial court's finding of abuse. Instead, the Department proceeded with a permanency plan with the goal of reunification, not one of permanent placement elsewhere, and continued on that path, at least until the first petition to terminate parental rights was filed, and perhaps beyond. The record does not include any permanency plan or testimony to indicate that a plan with a different goal was ever presented to the parents, agreed to, or approved by the court.

While the Department may not be required, in specified situations, to use reasonable efforts to rehabilitate the parents so that a child could safely return to the home, once the Department agrees to a permanency plan outlining the parents' and its responsibilities, its ability to rely on Tenn. Code Ann. § 37-1-166(g)(4) is limited. Once the Department agrees to responsibilities under a permanency plan whose goal is reunification of the family, it waives its option to refuse assistance to reunify that family until the permanency goal is modified.[7]

I would find that once the Department took action toward reunification of the family, and the family relied upon the plan agreed to by the Department, the Department's obligations to use

---

[6] One of those determinations is that the parent has subjected the child to aggravated circumstances. Tenn. Code Ann. § 37-1-166(g)(4)(A). The definition of "aggravated circumstances" includes severe child abuse. Tenn. Code Ann. § 36-1-102(9).

[7] Where a plan, or a modified plan, with a goal other than reunification is agreed to or ordered, continuation of reasonable efforts to reunify the family would be inconsistent with the new permanency plan. Thus, where the goal of the plan is something other than a reunification of the family, then the reasonable efforts required are those necessary to finalize a permanent placement of the child. Tenn. Code Ann. § 37-1-166 (g)(3).

reasonable efforts were triggered, and it can no longer rely on Tenn. Code Ann. § 37-1-166(g)(4)(A) to excuse its lack of action. This court has taken a similar position before. *See In re A.M.B.*, No. M2000-01130-COA-R3-CV, 2001 Tenn. App. LEXIS 408, at *9 n. 1 (Tenn. Ct. App. June 1, 2001) (no Tenn. R. App. P. 11 application filed) (stating that although the state asserted it was not required to provide counseling to the mother because its duty to use reasonable efforts to preserve and reunify families is removed where "aggravated circumstances" exist under Tenn. Code Ann. § 37-1-166(g)(4)(A), "We are not content to base our decision on that statute, however, since the State did establish a program designed to reunify [the mother] and the child").

Consequently, I would hold that the Department agreed to use reasonable efforts to reunify the family and was obligated to continue those efforts or modify the permanency goal for this child so that its efforts could be properly directed toward the new goal, whether that be adoption, placement with a relative, long-term foster care, or something else. After two and a half years of custody of this child, and at least two permanency plans with a goal of returning the child to her parents, the Department waived its ability to rely on Tenn. Code Ann. § 37-1-166(g)(4)(A).

The Department's failure to use reasonable efforts to reunify the family can result in denial of termination of parental rights, especially where the failure is directly related to an allegation by the Department that the parent failed to meet his or her requirements under a plan or to remedy conditions which prevent the safe return of the child to the home. *See In re D.D.V.*, No. M2001-02282-COA-R3-JV, 2002 Tenn. App. LEXIS 126 (Tenn. Ct. App. Feb. 14, 2002) (no Tenn. R. App. P. 11 application filed).

As discussed above, such failure to use reasonable efforts also is relevant to a determination of whether to terminate parental rights on the basis of a prior finding of child abuse where the Department has elected to proceed with efforts to reunify the family.[8] While a prior finding can, standing alone, provide the grounds for termination when the Department or the court takes action consistent with an intent to proceed toward such termination, inconsistent action should make reliance on the statute no longer available.

It is fundamentally unfair for the Department to lead parents to believe they can once again regain custody of their children by complying with specified obligations and then, months or years later, deny any responsibility of its own and seek termination on the basis of a finding made before the permanency plan to achieve reunification was agreed to. It is not consistent with the best interests of the child to visit with and maintain a relationship with parents, while adjusting to a foster home, with the child participating in planning for reunification of the family, when such reunification can be prevented by use of the prior finding regardless of the parents' or the Department's compliance with their respective obligations under the plan.

Although the General Assembly has directed the Department to file a petition to terminate parental rights in specified circumstances, including "if a juvenile court has made a finding of severe

---

[8]*See* Tenn. Code Ann. § 36-1-113(i) (regarding considerations on best interest).

child abuse as defined at § 37-1-102," Tenn. Code Ann. § 36-1-113(h)(1)(D), it has also recognized that the Department can choose, instead, to work toward reunification of the family. In addition,

> (2) At the option of the department, the department may determine that a petition to terminate the parental rights of the child's parents shall not be filed . . . , if one of the following exists:
>
> . . . .
>
> (C) The department has not made reasonable efforts under § 37-1-166 to provide to the family of the child, consistent with the time period in the department permanency plan, such services as the department deems necessary for the safe return of the child to the child's home.

Tenn. Code Ann. § 36-1-113(h)(2).

In the case before us, the Department could have determined that the abuse was severe enough to warrant a plan of termination of parental rights before it allowed the parents to believe otherwise. That does not appear to be the case, herein, however. It appears that the Department was originally of the opinion that the child's return to the home might be possible if certain remedial measures were taken. Thus, it is not really the prior finding of child abuse which triggered the Department's petition to terminate parental rights. Instead, it was the Department's later determination that sufficient improvement had not taken place and was unlikely to take place.

In its brief before us, the Department emphasizes the parents' failure to undergo substantive counseling to address the abuse suffered by their children or the issues that led to that abuse. We agree that counseling is an important precondition to returning a child to a home where abuse has occurred. In fact, Tenn. Code Ann. § 37-2-403(a)(5) requires that in cases involving child abuse or child neglect, where such child is placed in foster care, the parenting plan shall stipulate that the abusing or neglecting parent shall receive appropriate rehabilitative assistance through mental health consultation if so ordered by the court.

That argument by the Department indicates, however, the Department's concern was with the conduct of the parents after the removal of their child. Thus, it is not the prior finding that is the real ground for termination. Rather, it is the Department's belief that sufficient remedial measures have not been taken by the parents to allow the safe return home of the child. Accordingly, the Department filed the amended petition alleging essentially that: after more than two years, the parents had not remedied conditions to the extent that the child could return home and, rather than continuing the uncertainty of the child's future, the best interests of the child were served by termination of the parents' parental rights.

The trial court ruled that this ground was shown by clear and convincing evidence, and the majority opinion herein does not address this finding. The existence of only one ground need be proved to warrant termination of parental rights. *In re C.W.W.*, 37 S.W.3d 467, 473-74 (Tenn. Ct. App. 2000). Therefore, we must review that finding.

It is apparent that the trial court was disturbed by the Department's lack of effort to help this family meet the goal of reunification or help remediate the conditions or situation which prevented the return of the child to the home, stating "the state has not facilitated matching this family with resources to try to get them to attempt to ratify the problems that brought the children before the court." In addition, the court found, "There are still conditions that persist that the Court does not know if they could have been effectively remedied." Despite the court's finding regarding the Department's lack of help to the family, the trial court still found there was little likelihood the conditions would be improved.

The trial court however, appears to have been persuaded that the Department was not required to use reasonable efforts to reunify this family and did not place the burden of proving such efforts on the Department.

Therefore, I would vacate the judgment terminating parental rights and remand for a hearing on persistence of conditions ground, using the appropriate standards. Thus, I agree with the majority that the judgment should be vacated, but for different reasons.

_____
PATRICIA J. COTTRELL, JUDGE